## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| ETHELYN M. EGGAR,<br><br>               Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>               Defendant. | CV 20-04-H-JTJ<br><br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Plaintiff Ethelyn M. Eggar (Eggar) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Eggar resides in Lewis and Clark County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). The parties have consented to have the undersigned conduct all proceedings in this matter and enter judgment. (Doc. 18).

## BACKGROUND

Eggar is 57 years old.  (Doc. 20 at 157).  Eggar has a college education.  *Id.*
Eggar has a Bachelor of Science degree in accounting that she obtained in the
Phillipines.  (Doc. 20 at 158).  Eggar is able to use a computer.  *Id.*  Eggar has past
work experience as a certified nursing assistant (CNA) and as a care attendant.
(Doc. 20 at 162, 175).  Eggar receives rental income from a 12-unit apartment
building she owns in Great Falls, Montana.  (Doc. 20 at 94).

Eggar filed her application for disability insurance benefits on
December 16, 2013.  (Doc. 20 at 407).  Eggar alleged that she became disabled on
July 27, 2011.  *Id.*  Eggar alleged that she became disabled due to fusion surgery
nerve damage, nerve damage right arm, bulging discs, depression, and lower back
pain.  (Doc. 20 at 184).  The last date that Eggar was insured was March 31, 2017.
(Doc. 20 at 51).

An administrative law judge (ALJ) conducted a hearing on Eggar's
application for disability insurance benefits on May 6, 2015.  (Doc. 20 at 214).
Eggar was represented by a non-attorney representative.  *Id.*  Eggar testified at the
hearing.  (Doc. 20 at 87).  An impartial vocational expert also testified.
(Doc. 20 at 120).  The record was held open after the hearing so Eggar could
undergo a consultative medical examination.  (Doc. 20 at 62, 214).  Dr. Jamal

2

Balouch, M.D. performed the consultative examination on June 13, 2015.
(Doc. 20 at 62).  The ALJ issued his decision on August 24, 2015.  (Doc. 20 at
227).  The ALJ determined that Eggar was not disabled because Eggar possessed
the residual functional capacity to perform jobs that existed in significant numbers
in the national economy.  (Doc. 20 at 226-227).

Eggar asked the Appeals Council to review the decision.  (Doc. 20 at 236).
The Appeals Council vacated the ALJ's decision and remanded the case to the
ALJ for further proceedings.  (Doc. 20 at 236-237).  The ALJ conducted a second
hearing on April 6, 2018.  (Doc. 20 at 51).  Eggar was represented by an attorney
at the hearing.  *Id.*  Eggar testified at the hearing.  (Doc. 20 at 156).  A clinical
psychologist and an impartial vocational expert also testified.  (Doc. 20 at 151,
175).

The ALJ issued his decision on May 8, 2018.  (Doc. 20 at 67).  The ALJ
determined that Eggar was not disabled at any time between July 21, 2011, and
March 31, 2017, the date Eggar was last insured.  (Doc. 20 at 67).  The ALJ
determined that Eggar was not disabled because Eggar possessed the residual
functional capacity to perform jobs that existed in significant numbers in the
national economy.  (Doc. 20 at 66-67).

Eggar requested that the Administration Appeals Council (Appeals Council)

3

review the ALJ's decision. (Doc. 20 at 1). The Appeals Council denied Eggar's request for review. (Doc. 20 at 1). The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.*

Eggar filed the present appeal *pro se* on November 12, 2019. (Doc. 1). The matter has been fully briefed. (Docs. 22 and 23). The Court is prepared to rule.

## STANDARD OF REVIEW

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be

4

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months;" and (2) the impairment or

impairments are of such severity that, considering the claimant's age, education,

and work experience, the claimant is not only unable to perform previous work but

also cannot "engage in any other kind of substantial gainful work which exists in

the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d

968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

    The Social Security Administration regulations provide a five-step

sequential evaluation process for determining whether a claimant is disabled.

*Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R.

§§ 404.1520, 416.920.  The claimant bears the burden of proof under steps one

through four. *Bustamante*, 262 F.3d at 954.  The Commissioner bears the burden

of proof under step five. *Id.*  The five steps of the inquiry are:

1.    Is the claimant presently working in a substantially gainful activity?  If so, the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.    Does the claimant have an impairment that is severe or a combination of impairments that is severe?  If so, proceed to step three.  If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.    Do any of the claimant's impairments "meet or equal" one of the impairments described in the listing of impairments in

5

20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.      Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.      Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

## **BACKGROUND**

### A.      **ALJ's determination**

At step one, the ALJ determined that Eggar had not engaged in any substantial gainful activity during the period from her alleged onset date of July 27, 2011 through March 31, 2017, the date she was last insured. (Doc. 20 at 53).

At step two, the ALJ found that Eggar had the following severe impairments: cervical spondylosis, right medial epicondylitis, and a partial tear of the rotator cuff in her right shoulder. (Doc. 20 at 53). The ALJ found that Eggar also had a single non-severe impairment: depression. (Doc. 20 at 54). The ALJ explained why Eggar's depression was classified as non-severe. (Doc. 20 at 54). The ALJ explained that Eggar's depression was non-severe because she had no

6

limitation in understanding, remembering, or applying information. *Id.* She had

no limitation in interacting with others. *Id.* She had no limitation in her ability to

adapt and manage herself, and she had only mild limitations in her ability to

concentrate, persist and maintain pace. *Id.* The ALJ further noted that Eggar's

medical records showed that her symptoms of depression "were intermittent," and

she had received no "outpatient treatment or hospitalization" for her depression.

*Id.*

At step three, the ALJ found that Eggar did not have an impairment, or

combination of impairments, that met or was medically equal to one of the listed

impairments. (Doc. 20 at 55).

Before considering step four, the ALJ determined Eggar's residual

functional capacity.  The ALJ determined that Eggar possessed the residual

functional capacity to perform light work subject to the following limitations:

1) Eggar can lift and carry 20 pounds occasionally and 10 pounds frequently;

2) Eggar can walk and stand is some combination for 45 out of 8 hours; 3) Eggar

can sit for a 1 hour at a time, for a total of 8 hours, given the opportunity for

breaks; 4) Eggar can not crawl or climb ladders or scaffolds, but she can perform

all other postural activities on an occasional basis; 5) Eggar must avoid

concentrated exposure to extreme cold and vibrations; 6) Eggar can perform no

7

work involving sudden movements of the cervical spine and neck from side to side on more than an occasional basis; 7) Eggar can occasionally reach overhead with her right upper extremity; and 8) Eggar can occasionally lift objects overhead so long as they do not exceed one pound. (Doc. 20 at 55-56).

At step four, the ALJ determined that Eggar was not able to perform her past relevant work as a nursing assistant and care attendant. (Doc. 20 at 65).

At step five, the ALJ determined that Eggar was not disabled because she possessed the residual functional capacity to perform jobs that existed in significant numbers in the national economy. The ALJ determined that Eggar could work as a parking lot attendant, office helper, and sewing machine operator. (Doc. 20 at 66-67).

### B.    Eggar's Position

Eggar argues that the Court should reverse the Commissioner's decision for the following two reasons:

1.    The ALJ failed to provide sufficient reasons for discounting her testimony regarding the intensity, persistence and limiting effects of her neck and right shoulder pain; and

2.    The ALJ erred at step 5 when he adopted the vocational expert's testimony that she could perform other jobs that existed in significant numbers in the national economy.

(Doc. 22 at 2-25).

## C.    Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ's decision was based on substantial evidence and was free of legal error.

## DISCUSSION

### A.    Eggar's testimony regarding the intensity, persistence and limiting effects of her neck and right shoulder pain

Eggar testified during the hearings held before the ALJ on May 6, 2015, and on April 6, 2018.  Eggar testified that she was unable to work due to neck and right shoulder pain that limits her ability to stand, sit and walk for extended periods of time.  (Doc. 20 at 56, 96-114, 167-168).

The ALJ found that Eggar's neck and right shoulder pain could reasonably be expected to cause the alleged symptoms.  (Doc. 20 at 56).  However, the ALJ discounted Eggar's testimony regarding the "intensity, persistence and limiting effects" of her neck and right shoulder pain.  (Doc. 20 at 56-65).  Eggar argues that the ALJ erred when he discounted her testimony regarding the intensity, persistence and limiting effects of her neck and right shoulder pain.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Vasquez v. Astrue*,

9

572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  Rather, the claimant need only show that his impairment could reasonably have caused some degree of the symptoms.  *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of his symptoms only if the ALJ offers "specific, clear and convincing reasons for doing so."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ must identify the portion of the claimant's testimony that is not credible and the ALJ must describe the evidence that undermines the claimant's testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  The ALJ's findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  General findings by the ALJ are not sufficient.  *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102

10

(9th Cir. 2014).

The ALJ may use "ordinary techniques of credibility evaluation" to weigh a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ may consider the following factors in determining whether a claimant's testimony is credible: the claimant's reputation for truthfulness; inconsistencies in the claimant's testimony; inconsistencies between the claimant's testimony and her conduct; the claimant's daily activities and work record; and the testimony of physicians and third parties concerning the nature, severity, and effect of the claimant's alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

Here, the ALJ stated that he had discounted Eggar's testimony regarding her debilitating neck and shoulder pain for several reasons. First, the ALJ noted that Eggar had gone on a three-month vacation to the Philippines in 2012 to visit family members who resided there. (Doc. 20 at 56, 115). Eggar was able to remain seated in the airplane for the 10-hour trip to and from the Philippines. *Id.*

Second, the ALJ noted that Eggar's typical day in the Philippines involved spending time with her family and going to the beach, which required a one-hour drive. (Doc. 20 at 56, 116).

Third, the ALJ noted that Eggar was able to make the 90 mile trip from her

11

home in Helena, Montana to Great Falls, Montana, each month, for the purpose of
checking on her rental properties in Great Falls. (Doc. 56, 116-117).

Fourth, the ALJ noted that the objective medical evidence did not support
Eggar's subjective complaints of debilitating pain. The ALJ provided a detailed
discussion of Eggar's medical record during the relevant period from July 27,
2011 through March 31, 2017. (Doc. 20 at 57-64). The ALJ noted that although
Eggar had continued to complain of right shoulder and neck pain following her
neck surgery on July 27, 2011, Eggar's neurological examinations were generally
normal, the x-ray of Eggar's lumbar spine in June 2015 was normal, and the MRI
on Eggar's cervical spine in February 2018 showed that Eggar's cervical spine had
remained "relatively stable." (Doc. 20 at 59, 62-63).

Fifth, the ALJ noted that Eggar had a history of symptom magnification
which called into question the extent of her alleged pain. (Doc. 20 at 56). The
ALJ noted that numerous health care providers had found Eggar's complaints of
pain to be exaggerated and in excess of what was justified by examination. (Doc.
20 at 58-63). For example, treating physician Dr. Phillip Steele, M.D. treated
Eggar from March 2012 through April 2013. Dr. Steele stated in March 2012 that
an accurate examination of Eggar was "essentially impossible" because Eggar
acted as if "everything seemed to be just excruciatingly painful." (Doc. 20 at 58-

12

59, 934-35).  Dr. Steele described Eggar's pain complaints as "clear symptom magnification" and "overreacting."  *Id.*  Dr. Steele described Eggar's behavior as "highly suspicious."  *Id.*

Treating physician Dr. Allen Weinhart, M.D. treated Eggar from March 2012 through at least January 2016.  Dr. Weinhart stated in March 2012 that Eggar's "true physical capabilities" could not be determined given that she had "demonstrated a sub-maximal effort" on her functional capacity tests the month before.  (Doc. 20 at 58, 754).

Dr. James Crichton, M.D. examined Eggar in April 2014.  Dr. Crichton noted that Eggar was "very theatrical" and had demonstrated "quite a bit of grimacing and carrying on."  (Doc. 20 at 60-61, 855-857).  Dr. Crichton further noted that some of Eggar's abnormal movements "seemed entirely feigned." (Doc. 20 at 60-61, 855-857).

In February 2017, Physical Therapist Matthew Hustad provided physical therapy treatment to Eggar.  Eggar limped into her physical therapy appointment while holding her neck.  (Doc. 20 at 63, 1152).  In March 2017, Mr. Hustad had a random chance encounter with Eggar in a community park.  Hustad observed Eggar walk without a limp.  Hustad also observed Eggar walk her dog on a leash and lift her dog in the her car with no noticeable difficulty.  When Hustad

13

confronted Eggar with what he had observed in the park, Eggar became defensive. *Id.*

Sixth, the ALJ noted that he, himself, had observed Eggar engage in symptom magnification during the second administrative hearing on April 6, 2018. The ALJ noted that he had observed Eggar enter the building where the hearing was held. (Doc. 20 at 58). The ALJ observed that Eggar appeared to be in no pain and that Eggar walked with a normal gait. *Id.* However, when Eggar was in the hearing room, she walked with a pronounced limp and spent the entire hearing grimacing, twisting her arm, holding her right arm, and slowly moving her neck side-to-side with pain behaviors. *Id.*

The ALJ provided specific, clear and convincing reasons for discounting Eggar's testimony regarding the intensity, persistence and limiting effects of her neck and right shoulder pain. No legal error occurred.

## B.   The Vocational Expert's Testimony

The vocational expert testified that Eggar was capable of performing other jobs that exist in significant numbers in the national economy. The vocational expert testified that Eggar could work as a parking lot attendant, an office helper, and as a sewing machine operator. (Doc. 20 at 179). Eggar argues that the ALJ erred at step 5 when he relied on the testimony of the vocational expert. Eggar

14

argues that the ALJ should not have relied upon the vocational expert's testimony because it would not be realistic or practical for her to move from Helena, Montana to obtain work.   (Doc. 22 at 21).

The test at step 5 is whether the claimant possesses the residual functional capacity to perform jobs that exist in significant numbers in the national economy. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  Work exists in the national economy "when it exists in significant numbers in either the region where the [claimant] live[s] or in several other regions of the country." 20 C.F.R. §§ 404.1566(a), 416.966(a).  "It does not matter whether [w]ork exists in the immediate area in which the [claimant] live[s].  20 C.F.R. §§ 404.1566(a)(1), 416.966(a)(1).

Here, the record reflects that the ALJ properly assessed Eggar's residual functional capacity based upon Eggar's medical records, the opinions of Eggar's health care providers, and Eggar's own descriptions of her limitations.  (Doc. 20 at 55-65).  The ALJ presented a hypothetical to the vocational expert that included all of Eggar's medical and vocational limitations that were credible and supported by substantial evidence in the record.  (Doc. 20 at 177-180).  The ALJ was therefore entitled to rely on the vocational expert's testimony in response to the hypothetical.  See *Bayliss*, 427 F.3d at 1217-1218.  The ALJ did not err when he

15

relied upon the vocational expert's testimony.

## **CONCLUSION**

The ALJ's decision was supported by substantial evidence.  The ALJ did not commit legal error.

## **ORDER**

1.     The Commissioner's decision to deny benefits to Eggar is AFFIRMED.

2.     This case is DISMISSED with prejudice.

3.     The Clerk is directed to enter judgment accordingly.

DATED this 3rd day of May, 2021.


John Johnston
United States Magistrate Judge

16